### CENTRAL LUMBER CO. et al. v. SCHILLECI et al.

### SCHILLECI et al. v. CENTRAL LUMBER CO. et al.

6 Div. 161, 161–A.

Supreme Court of Alabama.

March 16, 1933.

Rehearing Denied May 25, 1933.

J. A. Estes, of Bessemer, and Smyer, Smyer & Bainbridge, of Birmingham, for appellant.

Huey, Welch & Stone, of Bessemer, for appellees and cross-appellants.

BROWN, Justice.

The original bill was filed by the appellants, Central Lumber Company and Bessemer Lumber Company, hereinafter referred to as complainants, against J. E. Dillard and J. L. Reeves, doing business as partners under the firm name of Dillard & Reeves, hereinafter referred to as contractors, and Sam Schilleci, hereinafter referred to as owner, to enforce a materialman's lien against a two-story dwelling and the lot upon which it is situated, for material furnished to the contractors by complainants in the construction of said building, to the extent of the balance due from the owner to the contractors on September 12, 1930, when written notice was given to the owner.

The respondents, by their joint and several answers to the bill, to state the substance of the averments of the answers, assert that complainants were joint adventurers with said contractors in the undertaking to con-struct said building for the owner, for a stated sum, and joined the contractors as coprincipals in the execution of a bond, with the United States Fidelity & Guaranty Company as surety indemnifying the owner against all claims of liens for material furnished and used in said building, and guaranteeing the full performance of the contract by said contractors.

After the filing of the answer by the respondents to the original bill, the surety company filed a petition praying that it be allowed to intervene and file an original bill in the nature of a cross-bill against the complainants and the contractors, alleging in substance the same matter as set up in said answer, asserting that the purpose of the original bill was to charge and hold it liable to the owner for any sum that might be charged as a lien against the property, the subject-matter of the original bill. The court granted the prayer of that petition over the objection of the complainants, and the surety company filed its original bill in the nature of a cross-bill, setting up the joint adventure between the complainants and the contractors, and alleging that the balance due under the contract from the owner to the contractors was paid by the owner to said contractors, who applied the same in discharging all claims for material and labor used in the construction of said building, except the claims of the complainants and an account for material due from the contractors to Birmingham Sash & Door Company, which was paid and discharged by the surety in pursuance of the obligation of said bond. The cross-bill prayed that the complainants be denied the relief which they sought in their original bill, and that they be "permanently enjoined * * * from further pursuing or prosecuting their said claims and their alleged right to have established and enforced a lien against the said Sam Schilleci and his property"; that said complainants and the contractors be decreed liable to the surety for the sum paid by it to the Birmingham Sash & Door Company and its solicitor's fees incurred in the prosecution of its said bill.

The complainants, in their answer to the bill of the surety company, alleged that the signature of the complainants to said bond was obtained by fraud, and that the making of such bond as surety for another was ultra vires.

Upon submission on the pleadings and proof for final decree on testimony taken ore tenus, and on documentary evidence, the court denied complainants' relief against the owner, but ascertained the amount of their claims for material furnished to the contractors, and rendered a decree against the contractors therefor, and dismissed the bill of the surety company, taxed the contractors with one-half of the costs, and the remainder

against the surety company, complainant in the cross-bill.

■ The evidence shows that the contract for the construction of the building was let at a competitive bidding, and was awarded to the contractors, Dillard & Reeves, who were required to give a surety company bond guaranteeing performance of the contract and the delivery of the building free of liens for material and labor; that said contractors were unable to make such bond, and thereafter complainants joined with them as principals, and secured the execution of the bond. The allegation that the signature of the complainants to the contract was procured by fraud is' not sustained by the proof, and there was evidence tending to show that the signature of complainants was authoritatively affixed to the bond. The contract for the construction of the building and the bond, taken together, constitute the contract between the parties. David Lupton's Sons Construction Co. v. Hugger Bros. Construction Co. (Ala. Sup.) 148 So. 610;[1] Pierce v. Tidwell, 81 Ala. 299, 2 So. 15; Montgomery Enterprises v. Empire Theater Co., 204 Ala. 566, 86 So. 880, 19 A. L. R. 987; Louisville & Nashville R. Co. v. Williams, 5 Ala. App. 615, 56 So. 865, 59 So. 673; Hunter-Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348.

Evidence was offered going to show that the complainants were engaged in the business of selling and furnishing building materials to such contractors, and that Dillard & Reeves had in the past been purchasing from them; that the consideration for complainants' joining in the adventure was that they were to have the right to furnish all such materials as they handled suitable for this particular job; and that Dillard & Reeves agreed to purchase from them all such materials at prices which they agreed on in advance, such prices meeting the prices of competing lumber dealers engaged in selling like materials.

In addition to selling building materials, it was within the charter powers of complainants to engage in the constructing and building business, and in the past they each had carried on this character of business.

■■ It is well settled that, "notwithstanding a corporation has no power to enter into a partnership it may under a joint venture with others transact any business which is within the scope of its legitimate powers and thereby become liable on account of the fiduciary relation assumed, and a corporation may in furtherance of the object of its creation contract with an individual, although the effect of the contract may be to impose upon it the liability of a partner." 14—A C. J. p. 293, § 2140, "Joint adventures;" 15 R. C.

L. p. 500, § 2; Louis Werner Sawmill Co. v. Vinson & Bolton, 220 Ala. 210, 124 So. 420.

There is no conflict between the principle stated and the holding in Central Railroad & Banking Company v. Smith, 76 Ala. 572, 52 Am. Rep. 353, where it was held that a corporation authorized by its charter "to construct and operate a railroad between the cities of Savannah and Macon, and to organize and carry on a banking business, has no power, express, implied, or incidental, to purchase and run a steamboat on the Chattahoochee river, which is no part of its route, nor to form a partnership with a natural person for carrying on that business."

■ Making of contracts for the construction of a building was clearly within the charter powers of the two complainant corporations, and the undertaking by them in the instant case was not ultra vires.

The statement of the case takes it out of the influence of authorities cited by appellants, holding that an ordinary business corporation has not authority to become a gratuitous guarantor or surety for another. See note, 11 A. L. R. 554–560.

■ We concur with the conclusion and judgment of the trial court that complainants, by joining with the contractors and becoming coadventurers with them, were not entitled to a lien on the owner's property. They stood, so to speak, in the shoes of Dillard & Reeves, and their claims were not within the influence of the statute which gives a lien to the materialman for materials furnished a contractor, to the extent of the unpaid balance due on the contract. Code 1923, § 8832.

■ The theory of the cross-bill filed by the surety company is that it was necessary for it to intervene and assert the owner's defense to the original bill in order to protect it— the surety company—from ultimate liability to hold the owner harmless from a charge or lien on the property.

The full import of the obligation of the surety was to guarantee the owner against damages resulting from nonperformance of the contract and to discharge all such obligations for material and labor furnished in the construction of the building as might legally be made a lien or charge upon the property, under the statute, Code of 1923, § 8832. This is the clear intent to be gathered from the provisions of the bond. 28 C. J. p. 930, § 76.

The claims asserted, as we have shown, were not within this class, and the liability of the surety could not be increased by the failure of the owner to assert his defense, if there had been such failure, and it was no concern of the surety company to intervene and defend for him. It had assumed no such obligation, by the terms of its bond.

[1] Ante, p. 25.

If it had a basis for claim against its principals in the bond, its remedy at law was plain and adequate. Our judgment, therefore, is that the cross-bill was dismissed without error.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.

### On Rehearing.

BROWN, Justice.

■■ If it be conceded that the surety may proceed in equity against the principals in the bond to enforce contribution, this right in and of itself would not authorize it to intervene in this litigation and file an original bill in the nature of a cross-bill. It had no interest in the res, the subject-matter of the original bill, and, it having joined with the principals in the bond to hold the owner harmless from liens arising under the statute for labor and materials, it certainly was not entitled to be subrogated as against the owner to the right of lienors whose claims it discharged by payment. The court erred in allowing it to intervene, and merely corrected the error by dismissing its cross-bill. Renfro Bros. v. Goetter, Weil & Co., 78 Ala. 311; Ex parte Printup, 87 Ala. 148, 6 So. 418; City Bank & Trust Co. v. Leonard, 168 Ala. 404, 53 So. 71.

The application for rehearing is therefore overruled.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.