# MERCHANTS' NATIONAL BANK OF CINCINNATI *v.* WEHRMANN.

**ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.**

No. 256.　Argued April 26, 1906.—Decided May 14, 1906.

Where a national bank sued for debts of a partnership, shares of which it had taken as security and afterwards acquired in payment of the debt, sets up at every stage of the suit its intention of relying on the bankruptcy law of the United States, it cannot be required in the first instance to anticipate the specific and qualified form in which the immunity finally was denied; and if in addition thereto there is a certificate of the state court to the effect that it was material to consider the question of the

bank's power under the banking law to become liable for the debt and that the decision was against the bank, this court has power on writ of error to review the judgment.

While a national bank may take by way of security property in which it is not authorized to invest, and may become the owner thereof by foreclosure in satisfaction of the debt; but, without deciding whether it could take shares in a partnership formed for purely speculative purposes as security, it cannot, even in satisfaction of a debt so secured, become the absolute owner of such shares. It would be *ultra vires* and as it cannot take the shares it is not, and cannot be held, liable for any of the debts of the firm.

A national bank which has taken such shares in satisfaction of a debt is not estopped either from denying that it was a partner or that it is liable for the debts of the firm.

THE facts are stated in the opinion.

*Mr. W. C. Herron* for plaintiff in error:

This court has jurisdiction under a similar ruling in *California Bank* v. *Kennedy*, 167 U. S. 362. The ruling of the state court necessarily rested upon a construction of the national bank act.

The merits of this case are also covered by *California Bank* v. *Kennedy*. See also *Central Transportation Co.* v. *Pullman Co.*, 139 U. S. 24; *First Nat. Bank* v. *Converse*, 200 U. S. 425.

*Mr. C. Bentley Matthews*, with whom *Mr. J. H. Ralston*, *Mr. Joseph B. Kelley* and *Mr. William J. Shroder* were on the brief, for defendants in error:

There was no Federal question involved or raised at any stage of the action.

It is not a Federal question unless some privilege or immunity or right secured by a Federal law is denied. The mere ordinary making of contracts and conducting the business of the bank and the obligations that ensue either from contract or from tort are not Federal questions. Nobody denies that a corporation, whether under the revised acts of the United States, or acts of the state legislature cannot perform acts *ultra vires*, but the section 5136 expressly permits the making of contracts, and the exercise of all powers apper-

taining to such companies that are usual and incidental to the carrying on of the business for which they are chartered and the application of the rules of common law and equity to its acts follows as a matter of course. The application of these rules does not raise a Federal question. *Inez Mining Co.* v. *Kinney,* 46 Fed. Rep. 832; *Allen* v. *Arguimbau,* 198 U. S. 149; *Leonard* v. *U. S. & P. R. R. Co.,* 198 U. S. 416; *Pierce* v. *Somerset Ry.,* 171 U. S. 641, 648; *Eustis* v. *Bolles,* 150 U. S. 361; *Seneca Nation* v. *Christy,* 162 U. S. 283; *Gillins* v. *Stinchfield,* 159 U. S. 658; *Speed* v. *McCarthy,* 181 U. S. 269; *Pa. R. R. Co.* v. *Hughes,* 191 U. S. 477; *Cook County* v. *Calumet & Chicago Canal Co.,* 138 U. S. 635.

A bank in common with other corporations is not bound, in a legal sense, by contracts beyond the scope of its charter powers—in other words, *ultra vires.* But when a contract is legal, the results that follow are those that usually follow such contracts in other cases, and the validity of the contract and its obligation depend upon the ordinary principles of the statutory or common law of the State, and do not raise a Federal question. In this case, the papers executed by the parties made out a partnership. *Clagget* v. *Kilbourne,* 1 Black, 346; *Yeoman* v. *Leslie,* 46 Ohio St. 190; *Hulitt* v. *Fairbanks,* 40 Ohio St. 233; *McFadden* v. *Leeka,* 48 Ohio St. 513; *Chester* v. *Dickinson,* 54 N. Y. 1; *Batty* v. *Adams Co.,* 16 Nebraska, 44; *Robins* v. *Butler,* 24 Illinois, 387; *Heirs of Ludlow* v. *Cooper's Devisees,* 4 Ohio St. 1.

A partnership may exist with transferable shares. *Wadsworth* v. *Dunn,* 164 Illinois, 360; *Wells* v. *Wilson,* 3 Ohio, 425; *Rianhard* v. *Hovey,* 13 Ohio, 300; *Jones* v. *Clark,* 42 California, 180; Lindley on Partnership, 363, § 5.

The indebtedness of the partnership follows the interest transferred like a transfer of a share of the stock as is said in *Brown* v. *Hitchcock,* 36 Ohio St. 667; Lindley on Companies, 6th ed. 665; *Mayhew's Case,* 5 De G. McN. & G. 848; *Wells* v. *Wilson,* 3 Ohio, 425.

A bank in working out its security may do, in that behalf,

whatever other persons may do under like circumstances. *First Nat. Bank* v. *Nat. Exchange Bank,* 92 U. S. 122. It is not necessary for us in this case to resort to the decision of *National Bank* v. *Case,* 99 U. S. 629, nor to go that far.

If the bank had acquired the ownership in the syndicate property otherwise than by taking it in payment of or as security for a previously contracted valid indebtedness, the transaction would have been *ultra vires* and void and could not be confirmed or ratified. *Earle* v. *Carson,* 188 U. S. 52. But if the bank, in order to secure and in payment of a valid debt due it, acquired ownership of property, it is not an *ultra vires* act, and it cannot escape liability for its own acts. And an action can be maintained in the state courts to recover indebtedness incurred in preserving and enhancing the value of the security under the act of August 13, 1888. *Roebling* v. *First National Bank of Richmond,* 30 Fed. Rep. 744; *Cockrill* v. *Abeles,* 86 Fed. Rep. 505; *Cooper* v. *Hill,* 94 Fed. Rep. 94; *Libby* v. *Union Nat. Bank,* 99 Illinois, 622; *Upton* v. *South Reading National Bank,* 120 Massachusetts, 153; *Reynolds* v. *Crawfordsville First National Bank,* 112 U. S. 405; *First National Bank* v. *Exchange Bank,* 92 U. S. 122.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill for the dissolution of a partnership, a receiver and an account. The partnership was formed to purchase, improve, divide into lots and sell a leasehold. There were forty shares in the firm, represented by transferable certificates. The plaintiff in error took nine of these shares as security for a debt, and afterwards became the owner of them in satisfaction of the debt, subject to the question whether the transaction was within the powers of a national bank. It was found at the trial that the partners must contribute to pay the debts of the firm, and some of them being insolvent the Bank was charged with the full share of a solvent partner. The Supreme Court of the State held this to be wrong, but decided that the Bank became a part owner of the property and that,

as it joined in the management of the same, it was liable for nine-fortieths of the expenses, which constituted the debts of the firm. 69 Ohio St. 160. A decree was entered to that effect, and the Bank brought the case here.

It is objected at the outset that this court has no jurisdiction because the specific question was not raised sufficiently upon the record. But at the trial the Bank objected that under the statutes of the United States it could not be held liable as a partner, following the frame of the bill and meeting the ruling of the court. Then, when the Supreme Court, after discussion of the statutes, imposed the modified liability and sent the case back, it objected that under the same statutes it could not be held liable for any proportion of the debts of the firm, and took this question on exceptions again to the Supreme Court. It showed at every stage its intention to rely upon the United States banking laws for immunity, and it would be an excessive requirement to hold the Bank bound in the first instance to anticipate the specific and qualified form in which the immunity finally was denied. In addition to the foregoing facts, all of which appear on the record, the Supreme Court made a certificate part of its record and judgment, to the effect that it became and was material to consider whether the Bank had power under Rev. Stat. §§ 5136, 5137, to become liable for the nine-fortieths as above stated and that the decision was against the claim of the plaintiff in error. *Marvin* v. *Trout,* 199 U. S. 212, 223; *Cincinnati Packet Co.* v. *Bay,* 200 U. S. 179. Of course such a claim of immunity under the laws of the United States, if sufficiently set up, can be brought to this court. *California Bank* v. *Kennedy,* 167 U. S. 362. See *Meyer* v. *Richmond,* 172 U. S. 82.

The question of substantive law presented is not without difficulty. It is not disposed of by the general proposition that a national bank may take by way of security property in which it is not authorized to invest, and may become owner of it by foreclosure or in satisfaction of a debt. It is not disposed of even by the decisions that it may acquire stock in a corporation

in this way, *First National Bank of Charlotte* v. *National Exchange Bank*, 92 U. S. 122, and so subject itself to the liability of a stockholder for the corporate debts. *National Bank* v. *Case*, 99 U. S. 628; *California Bank* v. *Kennedy*, 167 U. S. 362, 366, 367; *First National Bank of Ottawa* v. *Converse*, 200 U. S. 425, 438, a proposition not shaken by *Scott* v. *Deweese*, 181 U. S. 202, 218. For it does not follow that because the interest in a partnership is represented by a paper certificate in form more or less resembling a certificate of stock in a corporation and transferable like it, a national bank can take the partnership certificate to the same extent that it could take the stock.

As the Supreme Court of Ohio assumes such partnerships and certificates to be valid we assume them to be. *Wells* v. *Wilson*, 3 Ohio, 425; *Walburn* v. *Ingilby*, 1 Myl. & K. 61, 76; *Re The Mexican & South American Co.*, 27 Beav. 474, 481; *S. C.*, 4 De G. & J. 320; *Philips* v. *Blatchford*, 137 Massachusetts, 510. We may assume further, in accordance with a favorite speculation of these days, that philosophically a partnership and a corporation illustrate a single principle, and even that the certificate of a share in one represents property in very nearly the same sense as does a share in the other. In either case the members could divide the assets after paying the debts. But from the point of view of the law there is a very important difference. The corporation is legally distinct from its members, and its debts are not their debts. Therefore, when a paid-up share in a corporation is taken, no liability is assumed, apart from statute, but simply a right equal in value to a corresponding share in the assets and good will of the concern after its debts are paid. If the right is worth something it is a proper security, and if it is worth nothing no harm is done. It is true that a statute may add a liability, but when, as usual, this is limited to the par value of the stock, it has not been considered to affect the nature of the share so fundamentally as to prevent a national bank from taking it in pledge, with qualifications, as it might take land or bonds.

But to take a share by transfer on the books means to be-

come a member of the concern. The person who appears on the books of the corporation as the stockholder is the stockholder as between him and the corporation, and his rights with regard to the corporate property are incident to his position as such. *National Bank* v. *Case*, 99 U. S. 628, 631; *Pullman* v. *Upton*, 96 U. S. 328. This does not matter, or matters less, in the case of a corporation, for the reasons which we have stated. But when a similar transfer is made of a share in a partnership it means that the transferee at once becomes a member of the firm and goes into its business with an unlimited personal liability, in short, does precisely what a national bank has no authority to do. This the Supreme Court of Ohio rightly held beyond the powers of the Bank. U. S. Rev. Stat. §§ 5136, 5137. It is true that it has been held that a pledgee may escape liability if it appears on the certificate and books that he is only a pledgee. *Pauly* v. *State Loan & Trust Co.*, 165 U. S. 606; *Robinson* v. *Southern National Bank*, 180 U. S. 295; *Rankin* v. *Fidelity Trust Co.*, 189 U. S. 242, 249. No doubt the security might be realized without the pledgee ever becoming a member of the firm. It is not necessary in this case to say that shares like the present could not be accepted as security in any form by a national bank. But such a bank cannot accept an absolute transfer of them to itself. It recently has been decided that a national bank cannot take stock in a new speculative corporation, with the common double liability, in satisfaction of a debt. *First National Bank of Ottawa,* v. *Converse*, 200 U. S. 425. *A fortiori*, it cannot take shares in a partnership to the same end.

We are of opinion that with the liability as partner all liability falls. The transfer of the shares to the Bank was not a direct transfer of a legal interest in the leasehold, which was in the hands of trustees. It was simply a transfer of a right to have the property accounted for and to receive a share of any balance left after paying debts, and the acquisition of this right was incident solely to membership in the firm. If the membership failed the incidental rights failed with it, and with the

rights the liabilities also disappeared. Becoming a member of the firm was the condition of both consequences. As the Bank was not estopped by its dealings to deny that it was a partner, it was not estopped to deny all liability for partnership debts. See *California Bank* v. *Kennedy*, 167 U. S. 362, 367. It seems to us unnecessary to add more in order to show that the claim against the plaintiff in error must be dismissed.

*Judgment reversed.*

MR. JUSTICE HARLAN, MR. JUSTICE BREWER and MR. JUSTICE McKENNA dissent.